**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: | ) Bankruptcy No. 04 B 19902 |
| | ) Chapter 7 |
| ROBERT K. UNGLAUB, JR., | ) Judge John H. Squires |
| | ) |
| Debtor. | ) |
| | ) |
| ——————————————— | ) |
| GINA B. KROL, Chapter 7 Trustee, | ) Adv. No. 04 A 03943 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT K. UNGLAUB, JR. and | ) |
| NANCY L. UNGLAUB, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This matter comes before the Court on the complaint filed by Gina B. Krol, the

Chapter 7 trustee (the "Trustee") of the estate of the debtor, Robert K. Unglaub, Jr.

("Robert"), against Robert and his spouse, Nancy L. Unglaub ("Nancy") alleging that Robert

and Nancy encumbered certain Colorado real property in favor of Nancy and that such

encumbrance was a fraudulent transfer. For the reasons set forth herein, the Court grants

partial judgment in favor of the Trustee and finds that the recording of the junior mortgage

given to Nancy by Robert on the Colorado real property was a fraudulent transfer pursuant

to COLO. REV. STAT. §§ 38-8-105(1)(a) and (b) and 38-8-106(1). Under 11 U.S.C. §

544(b)(1), the Trustee may avoid the mortgage to Nancy on the Colorado real property.

Further, the Trustee's cause of action under COLO. REV. STAT. § 38-8-106(2) is time barred.

-2-

Even if that action was not time barred, the Court finds that she has failed to prove a prima facie case under § 38-8-106(2). The Trustee's request for damages, prejudgment interest, and attorney's fees is hereby denied. The Trustee's taxable costs will be assessed against Robert and Nancy under 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054-1 within thirty days hereof.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

## II. FACTS AND BACKGROUND

Many of the facts in this matter are undisputed. Robert testified that from 1986 to March 2001, he was the chief executive officer of The Spectrum Group, Inc. ("Spectrum") and owned 95% of the company. Between 1997 and 2000, Robert executed several personal guaranties, wherein he assumed personal liability for commercial loans that Spectrum obtained from American National Bank & Trust Company of Chicago ("ANB").[1] Trustee Group Ex. No. 2.

In February of 2000, Nancy obtained a $500,000.00 home equity line of credit from ANB. Trustee Ex. Nos. 7 and 8. The line of credit was secured by real property that Nancy

---

[1] ANB was a predecessor to Bank One, N.A. The Court will refer to Bank One as ANB throughout this Opinion for purposes of consistency and clarity.

-3-

owned in Hinsdale, Illinois. Trustee Ex. No. 7. It is undisputed that Robert did not have an ownership interest in this Hinsdale property, which Nancy and Robert occupied as their residence. Robert was listed as an applicant on the home equity application. *Id.* However, he was not listed as a borrower on the home equity agreement and disclosure. Trustee Ex. No. 8. Nevertheless, Robert was an authorized signatory on the checks that were written from that line of credit. Trustee Ex. No. 9.

In August 2000, ANB required Robert to pledge marketable securities in an amount in excess of $1,444,000.00 to secure the personal guaranties he had executed on Spectrum's loans from ANB. Trustee Ex. No. 3.

Robert testified that in October of 2000, Nancy loaned him $300,000.00 which she obtained from the ANB line of credit. On October 27, 2000, in consideration for that loan, Robert executed a promissory note in favor of Nancy. Trustee Ex. No. 11. Robert made no payments to Nancy under the terms of the note. On that same date, Robert granted a junior mortgage in favor of Nancy (the "Mortgage") on real property that he owned which was located at 210 Offerson Road, Unit R-220, St. James Place, Colorado (the "Colorado Property"). Trustee Ex. No. 12. The Mortgage was not recorded, however, until April 23, 2003 in Eagle County, Colorado. *Id.* It is unclear from the evidence, including the testimony of Robert and Nancy, why the Mortgage was not recorded for over two years after it was granted. Robert testified that the Colorado Property was worth approximately $850,000.00 at the time the Mortgage was recorded and that it was encumbered by a first mortgage in the amount of $450,000.00.

·4·

On October 19, 2000, Robert loaned Spectrum $300,000.00. Trustee Ex. No. 6. The loan to Spectrum was evidenced by a promissory note executed by the chief financial officer of Spectrum in favor of Robert. Trustee Ex. No. 10. Spectrum made no payments to Robert under the terms of the note. As of October 31, 2000, Spectrum's net income was more than $3,750,000.00 below projections for the year 2000. Trustee Ex. No. 5. In addition, Spectrum had a net loss of $2,586,126.00. *Id.* Robert admitted that as of October 2000, Spectrum was balance-sheet insolvent.

Robert testified that Spectrum ceased operations in February of 2001. Some time during 2001, ANB began discussions with Robert about the personal guaranties he executed to secure the loans of Spectrum. Robert testified that, at that same time, Spectrum defaulted on the ANB loans. On March 3, 2003, ANB commenced an action against Robert in Illinois state court based on his failure to honor the personal guaranties. Trustee Ex. No. 1, Ex. No. 1. At the time of the litigation against Robert, ANB held a security interest in the Colorado Property (the "ANB Mortgage") through a note and deed of trust executed by Robert. Trustee Ex. No. 1, Ex. Nos. 2-5. On June 13, 2003, in connection with the Illinois state court litigation, ANB sent a letter to Robert demanding payment of $1,379,085.42 and notifying him that his failure to make such payment would result in ANB commencing a mortgage foreclosure action against the Colorado Property. Trustee Ex. No. 15.

On June 16, 2003, ANB filed a motion for summary judgment in the Illinois state court litigation. Trustee Ex. No. 1, Ex. No. 8. Robert failed to pay the amounts due to ANB, and on August 18, 2003, ANB commenced a mortgage foreclosure action on the Colorado Property. Trustee Ex. No. 1, Ex. No. 9. On September 29, 2003, Robert paid the ANB

-5-

Mortgage on the Colorado Property. On October 24, 2003, the Illinois state court entered summary judgment in favor of ANB and against Robert. Trustee Ex. No. 1, Ex. No. 10.

Robert admits that at the time the Mortgage was recorded, he was indebted to ANB. Further, he admits that he retained possession or control of the Colorado Property when the Mortgage was recorded. Robert testified that the Colorado Property was the only real property he owned at this time. He acknowledged that the recording of the Mortgage decreased the amount available to his other creditors. In addition, Robert stated that Spectrum was unable to pay on the loan made to it by him. Finally, Robert admits that he was sued by ANB and threatened with suit before the recording of the Mortgage. Nancy testified that she did not provide Robert with any additional consideration when the Mortgage was recorded.

Robert filed a voluntary Chapter 7 bankruptcy petition on May 21, 2004. The Trustee filed the instant adversary proceeding on October 26, 2004. Trustee Ex. No. 1. The Trustee alleges in her complaint that the recording of the Mortgage constituted a fraudulent transfer because it was done with the intent to hinder, delay, or defraud Robert's creditors and was recorded without receiving a reasonably equivalent value. The Trustee seeks to avoid the Mortgage. In addition, the Trustee requests damages, in an unspecified amount, pre-judgment interest, attorney's fees, and costs. Robert and Nancy set forth several affirmative defenses in their answer to the complaint.[2]

---

[2] The three affirmative defenses are briefly as follows:
> (1) Nancy loaned Robert $300,000.00 evidenced by the Mortgage dated October 27, 2000 for the purpose of capitalization of Spectrum.
> (2) The funds represented by the Mortgage were transferred from a home equity line of credit secured by Nancy's real estate located in Hinsdale,

-6-

## III. DISCUSSION

The Trustee seeks to avoid the Mortgage granted to Nancy on the Colorado Property

pursuant to 11 U.S.C. § 544(b)(1), which provides in pertinent part as follows:

> [T]he trustee may avoid any transfer of an interest of the
> debtor in property . . . that is voidable under applicable law by
> a creditor holding an unsecured claim that is allowable under
> section 502 of this title or that is not allowable only under
> section 502(e) of this title.

11 U.S.C. § 544(b)(1). This section expressly authorizes a trustee to avoid a transfer

voidable under applicable state law. *Id.*; *see also Summers v. Perkins*, 81 P.3d 1141, 1142-

43 (Colo. Ct. App. 2003). Furthermore, if a transfer is avoided under § 544(b)(1), the

property itself or the value of that property can be recovered for the benefit of all of the

creditors under 11 U.S.C. § 550 from, among others, "the initial transferee of such transfer

or the entity for whose benefit such transfer was made[.]" 11 U.S.C. § 550(a)(1); *see also*

*Summers,* 81 P.3d at 1143.

In a case under § 544(b)(1), the trustee has the rights of an unsecured creditor to

avoid transactions that can be avoided by such creditor under state law. *In re Image*

*Worldwide, Ltd.*, 139 F.3d 574, 576-77 (7th Cir. 1998). The trustee need not identify the

creditor, so long as an unsecured creditor exists. *Id.* at 577; *In re Leonard*, 125 F.3d 543, 544

---

Illinois, contemporaneously with the execution of the note and Mortgage
from Robert to Nancy.
(3) The recording of the Mortgage is not a "transfer" under the law, but
instead memorialized the transaction of a transfer of funds for value occurring
in October 2000, which were contemporaneously invested by Robert into
Spectrum.

*See* Answer at 5. The Court addresses these defenses *infra*.

-7-

(7th Cir. 1997). The transaction can be avoided completely even if the trustee cannot produce creditors whose liens total more than the value of the property. *Leonard*, 125 F.3d at 544-45. In the matter at bar, the Trustee has demonstrated that Robert was indebted to ANB at the time he recorded the Mortgage and that he created a security interest in the Colorado Property in favor of Nancy. Specifically, ANB filed a proof of claim in Robert's case in the sum of $1,319,104.58. Accordingly, the Trustee may proceed against Robert and Nancy under state law.

The applicable state law here is the Colorado Uniform Fraudulent Transfer Act, COLO. REV. STAT. § 38-8-101 *et seq.* (the "CUFTA"), which became effective on July 1, 1991.[3] *See Sands v. New Age Family P'ship, Ltd.*, 897 P.2d 917, 919 (Colo. Ct. App. 1995). The relevant portions of the CUFTA provide as follows:

> § 38-8-105. Transfers fraudulent as to present and future creditors
>> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

---

[3] The Trustee cited to the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.* in her complaint. Nevertheless, the Court informed the parties at the trial that Colorado law applied to this matter because the relevant property is located in Colorado and the Mortgage given to Nancy encumbering the Colorado Property was recorded in Colorado. Thus, even though Robert resides in Illinois, Colorado law governs the alleged fraudulent conveyance.

-8-

(I) Was engaged or was about
to engage in a business or a
transaction for which the
remaining assets of the debtor
were unreasonably small in
relation to the business or
transaction; or

(II) Intended to incur, or
believed or reasonably should
have believed that he would
incur, debts beyond his ability
to pay as they became due.

§ 38-8-106. Transfers fraudulent as to present creditors

(1) A transfer made or obligation incurred by
a debtor is fraudulent as to a creditor whose
claim arose before the transfer was made or
the obligation was incurred if the debtor made
the transfer or incurred the obligation without
receiving a reasonably equivalent value in
exchange for the transfer or obligation and the
debtor was insolvent at that time or the debtor
became insolvent as a result of the transfer or
obligation.

(2) A transfer made by a debtor is fraudulent
as to a creditor whose claim arose before the
transfer was made if the transfer was made to
an insider for an antecedent debt, the debtor
was insolvent at that time, and the insider had
reasonable cause to believe that the debtor was
insolvent.

COLO. REV. STAT. §§ 38-8-105 and 38-8-106.

Because portions of the CUFTA are similar to 11 U.S.C. § 548(a)(1) and (2),[4]

interpretations made under the Bankruptcy Code are instructive. *Kojima v. Grandote Int'l*

---

[4] An important difference between § 548 and the CUFTA is that § 548 authorizes
avoidance of transfers made within one year before the bankruptcy filing. 11 U.S.C. §
548(a). Causes of action for fraudulent conveyances can be brought under the CUFTA,
however, within four years after the transfer was made. COLO. REV. STAT. § 38-8-110(1)(a)
and (b).

-9-

*Ltd. Liab. Co. (In re Grandote Country Club Co.)*, 252 F.3d 1146, 1152 (10th Cir. 2001);

*Ciccarelli v. Guar. Bank*, 99 P.3d 85, 88 (Colo. Ct. App. 2004); *Schempp v. Lucre Mgmt.*

*Group, LLC*, 18 P.3d 762, 764 (Colo. Ct. App. 2000).

Pursuant to § 38-8-105(1) of the CUFTA, the Trustee may recover the transfer made

by Robert to Nancy under two circumstances: (1) if Robert made the transfer with actual

intent to hinder, delay, or defraud a creditor; or (2) if Robert did not receive a reasonably

equivalent value in exchange for the transfer and he intended to incur or believed that he

would incur debts beyond his ability to pay as they became due. *See* COLO. REV. STAT. § 38-

8-105(1); *Grandote Country Club*, 252 F.3d at 1151. The CUFTA speaks to two types of

fraud- "fraud in fact" and "fraud in law." *See, e.g., Scholes v. Lehmann*, 56 F.3d 750, 756-57

(7th Cir.), *cert. denied sub nom. African Enter., Inc. v. Scholes*, 516 U.S. 1028 (1995).

"Fraud in fact" or actual fraud pursuant to § 38-8-105(1)(a) of the CUFTA occurs

when a debtor transfers property with the intent to hinder, delay, or defraud his creditors.

The moving party must prove that there was a specific intent to hinder, delay, or defraud.

*Schempp v. Lucre Mgmt. Group, LLC*, 75 P.3d 1157, 1165 (Colo. Ct. App. 2003). Whether

a debtor intended to hinder, delay, or defraud creditors is a question of fact. *Id.* at 1161. The

movant has the burden of proving all elements of a fraudulent transfer before the debtor must

come forward to prove his defenses. *Fitzgibbons v. Thomason (In re Thomason)*, 202 B.R.

768, 771 (Bankr. D. Colo. 1996).

In determining whether a transfer is made with actual intent to defraud, the CUFTA

sets forth several factors–also known as the "badges of fraud"–from which an inference of

-10-

fraudulent intent may be drawn. *Great Neck Plaza, L.P. v. LePeep Rests., LLC*, 37 P.3d 485, 491 (Colo. Ct. App. 2001).  Section 38-8-105(2) sets forth the following indicia:

> (a) The transfer or obligation was to an insider;
> (b) The debtor retained possession or control of the property transferred after the transfer;
> (c) The transfer or obligation was disclosed or concealed;
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (e) The transfer was of substantially all the debtor's assets;
> (f) The debtor absconded;
> (g) The debtor removed or concealed assets;
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

COLO. REV. STAT. § 38-8-105(2).

When these "badges of fraud" are present in sufficient number, they may give rise to an inference or presumption of an intent to defraud. *Schempp*, 75 P.3d at 1161; *Schempp*, 18 P.3d at 764.  Under the Federal Rules of Evidence, "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast." FED. R. EVID. 301.

Under the CUFTA, an "insider" of an individual debtor includes relatives of the debtor. COLO. REV. STAT. § 38-8-102(8)(a)(I); *see also Thomason*, 202 B.R. at 770.  A

·11·

relative includes a spouse of the debtor. COLO. REV. STAT. § 38-8-102(12); *Thomason*, 202

B.R. at 770. A transaction between a husband and wife is presumptively fraudulent. *Gutheil*

*v. Polichio*, 86 P.2d 972, 974 (Colo. 1939). Nevertheless, the movant must still establish an

intent to hinder, delay, or defraud. *Mohler v. Buena Vista Bank & Trust Co.*, 588 P.2d 894,

896 (Colo. Ct. App. 1978).

The CUFTA expressly provides a defense to fraud in fact under § 38-8-109(1), stating

that "[a] transfer or obligation is not voidable under section 38-8-105(1)(a) against a person

who took in *good faith and for a reasonably equivalent value* or against any subsequent

transferee or obligee." COLO. REV. STAT. § 38-8-109(1) (emphasis supplied). Courts have

recognized that a defense under § 38-8-109(1) of the CUFTA consists of two elements: good

faith and reasonably equivalent value. *Thomason*, 202 B.R. at 774.

Under § 38-8-105(1)(b) of the CUFTA, "fraud in law," on the other hand, does not

require a showing of fraudulent intent. In order for the Trustee to establish that a conveyance

is fraudulent in law, four elements must be present: (1) Robert made a voluntary transfer; (2)

at the time of the transfer, Robert had incurred obligations elsewhere; (3) Robert made the

transfer without receiving a reasonably equivalent value in exchange for the transfer; and (4)

Robert intended to incur or believed or reasonably should have believed that he would incur

debts beyond his ability to pay as they came due. *See* COLO. REV. STAT. § 38-8-105(1)(b).

Whether "reasonably equivalent value" has been received is a question of fact.

*Ciccarelli*, 99 P.3d at 88. What constitutes "reasonably equivalent value" for the transfer

requires an analysis of all of the facts and circumstances surrounding the transaction.

*Schempp*, 18 P.3d at 765. "The standard of 'reasonably equivalent value' implies a rule of

-12-

reasonableness in light of the particular circumstances." *Id.* Reasonable equivalence is not synonymous with market value, even though market value is an important factor to be utilized in the assessment. *Silverberg v. Colantuno*, 991 P.2d 280, 287 (Colo. Ct. App. 1998). For purposes of the CUFTA, equity looks to the substance of the transaction rather than its form. *Ciccarelli*, 99 P.3d at 88.

In determining whether reasonably equivalent value was received under the CUFTA, courts should consider how that phrase has been construed under the Bankruptcy Code. *See Image Worldwide*, 139 F.3d at 577. The Code does not define the term "reasonably equivalent value." The Seventh Circuit has recognized that there is no fixed formula for determining reasonable equivalence. *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). That determination will depend on all the facts of each case. *Id.* Several factors that have been utilized to determine reasonably equivalent value include: (1) whether the value of what was transferred is equal to the value of what was received; (2) the market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. *Id.* Nominal consideration is inadequate to satisfy the reasonably equivalent value standard. *Image Worldwide*, 139 F.3d at 580.

The elements of a cause of action under § 38-8-106(1) of the CUFTA are: (1) a transfer was made by Robert; (2) Robert made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and (3) Robert either was insolvent at the time of the transfer or became insolvent as a result of the transfer. *See* COLO. REV. STAT. § 38-8-106(1). In contrast, to establish a cause of action under § 38-8-106(2) of the CUFTA, the following elements must be shown: (1) a transfer was made by Robert; (2) Robert made the

-13-

transfer to an insider; (3) the transfer was for an antecedent debt; (4) Robert was insolvent at the time of the transfer; and (5) the insider had reasonable cause to believe that Robert was insolvent. *See id.* § 38-8-106(2).

One difference between § 38-8-105 and § 38-8-106 of the CUFTA is that § 38-8-106 includes the requirement that a creditor who has the right to assert some claim must have a claim that arose before the alleged fraudulent transaction. *Id.* § 38-8-106. Further, intent is not an element under § 38-8-106.

The CUFTA provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." *Id.* § 38-8-103(1); *see also Thomason*, 202 B.R. at 773 (*citing* § 38-8-103(1)). This definition of insolvency mirrors the balance-sheet test for insolvency under the Bankruptcy Code. 11 U.S.C. § 101(32)(A). The CUFTA also provides that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." COLO. REV. STAT. § 38-8-103(2); *see also Schempp*, 75 P.3d at 1164 (*quoting* § 38-8-103(2)); *Thomason*, 202 B.R. at 773 (*citing* same).

### A. Colo. Rev. Stat. § 38-8-105(1)(a)

First, the Court will address the Trustee's claim that Nancy's Mortgage on the Colorado Property constituted fraud in fact or actual fraud pursuant to § 38-8-105(1)(a) of the CUFTA. Under § 38-8-105(1)(a), a transfer made or an obligation incurred by a debtor is fraudulent if it was incurred with "actual intent to hinder, delay, or defraud any creditor of the debtor[.]" COLO. REV. STAT. § 38-8-105(1)(a).

At the outset, the Court rejects Robert and Nancy's affirmative defense that the recording of the Mortgage was not a "transfer" under the CUFTA. The CUFTA defines

-14-

"transfer" to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." *Id.* § 38-8-102(13);[5] *see also Great Neck Plaza*, 37 P.3d at 491; *Sands*, 897 P.2d at 919. Additionally, § 38-8-107 provides that a transfer is made with respect to real property when "the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee[.]" COLO. REV. STAT. § 38-8-107(1)(a)(I).

The recording of the Mortgage created a lien against Robert's Colorado Property in favor of Nancy. Prior to the recording, Nancy was merely in possession of a promissory note that Robert executed and the unrecorded Mortgage. She did not have a recorded secured interest in the Colorado Property. The perfected transfer of an interest in the Colorado Property did not occur until the Mortgage was recorded in April 2003. The Court concludes that under the CUFTA the recording of the Mortgage constituted a "transfer."

With respect to intent, Robert admitted that the Mortgage was not recorded at the same time Nancy loaned him the $300,000.00. He testified that in April of 2003 he realized that the Mortgage had not been recorded, so he recorded it. There was no other evidence adduced at trial regarding Robert's intent at the time of the recording of the Mortgage. Nancy, on the other hand, testified that she was unaware that the Mortgage needed to be recorded in Colorado in order for it to be effective.

---

[5] The definition of "transfer" is principally derived from section 101(54) of the Bankruptcy Code. 11 U.S.C. § 101(54).

-15-

Because there is rarely direct evidence of the intent underlying a transfer of property, courts look to circumstantial evidence—or the badges of fraud—in determining whether a transfer was intended to hinder, delay, or defraud creditors. At this point, it is helpful to analyze the evidence in terms of the eleven "badges of fraud," many of which are present in this matter: (1) the transfer—the creation of a security interest in the Colorado Property in favor or Nancy—was made to an insider; (2) Robert retained possession of the Colorado Property after the transfer; (3) the Mortgage was not disclosed until April of 2003 when it was recorded;[6] (4) Robert had been sued by ANB to foreclose on its mortgage on the Colorado Property prior to the transfer; (5) Robert did not abscond; (6) there was no evidence that Robert removed or concealed assets; (7) there was evidence that the transfer was made shortly after a demand was made by ANB on Robert to pay the substantial debt he had incurred personally as a result of the guaranties; and (8) Robert did not transfer the essential assets of a business to a lienor who transferred the assets to an insider of Robert.

The three remaining badges of fraud—whether Robert was insolvent or became insolvent shortly after the recording of the Mortgage on the Colorado Property, whether the value of the consideration Robert received was reasonably equivalent to the value of the

---

[6] A concealment exists where a debtor fails to record a document in the public records. *Thomason*, 202 B.R. at 772. Indeed, the Colorado Supreme Court has pointedly noted that "an agreement between the party giving and the party receiving . . . an instrument that it shall be kept from the public, or that it shall not be entered of record for an unreasonable or indefinite time, is one of the strongest badges of fraud." *Walton v. First Nat'l Bank*, 22 P. 440, 444 (Colo. 1889). While there was no direct evidence that Robert and Nancy agreed to keep the Mortgage secret, the Court infers from the timing of the recording that Robert intended to prefer Nancy over his other creditors. This is especially significant because he waited to file his bankruptcy petition for more than one year after the recording of the Mortgage, just outside of the one-year insider preference avoidance period of 11 U.S.C. § 547(b)(4)(B).

·16·

transfer, and whether the transfer was of substantially all of Robert's assets–warrant a more
detailed discussion.

First, with respect to whether Robert was insolvent or became insolvent shortly after
the transfer was made, the evidence failed to show that Robert was generally not paying his
debts as they became due. The Trustee points to ANB's letter to Robert on June 13, 2003,
Trustee Ex. No. 15, demanding payment of the $1,379,085.42 to cure the default under the
note. This letter was the only evidence proffered by the Trustee to show that Robert was
generally not paying his debts as they became due. Evidence that a debtor failed to pay some
debts is not sufficient to prove that he is generally not paying his debts and, thus, will not
give rise to a presumption that the debtor was insolvent at or near the time of the alleged
fraudulent transfer. *Schempp*, 75 P.3d at 1164. The Court finds this single demand letter
insufficient to establish that Robert was generally not paying his debts as they became due.

However, the evidence did show that at the time the Mortgage was recorded in April
of 2003, the sum of Robert's debts was greater than the value of all of his assets. Robert
testified that at that time, ANB had made a demand upon him to pay the approximate
$1,300,000.00 debt that he had guaranteed on behalf of Spectrum. Robert admitted that he
did not have enough funds to pay ANB. Further, Robert testified that the Colorado Property
was his most valuable asset, worth approximately $850,000.00 subject to a first mortgage of
$450,000.00, leaving equity of $400,000.00. The Mortgage for $300,000.00 to Nancy left
$100,000.00 in equity in the Colorado Property. Based upon this testimony, Robert was
balance-sheet insolvent. Accordingly, the Court finds that Robert was insolvent or became
insolvent shortly after the recording of the Mortgage.

-17-

Next, turning to whether the value of the consideration received by Robert was reasonably equivalent to the value of the transfer, the Court finds that based on the evidence adduced at trial, Robert did not receive a reasonably equivalent value for the transfer. It is undisputed that Nancy did not give Robert any consideration in April of 2003 when the Mortgage was recorded. This event elevated Nancy's claim from unsecured with respect to Robert's creditors to secured. The Court rejects Robert and Nancy's argument that the $300,000.00 loan made by Nancy to Robert was contemporaneous with the Mortgage Robert granted to Nancy on the Colorado Property. Indeed, Nancy did not become a secured creditor until the Mortgage was recorded, approximately two and one-half years after she made the loan to Robert. Robert received no consideration in April 2003 when he recorded the Mortgage. Thus, the Court finds that Robert failed to demonstrate that he received a reasonably equivalent value for the recording of the Mortgage.

Finally, the Court must determine whether the recording of the Mortgage which created a lien against the Colorado Property constituted a transfer of substantially all of Robert's assets. Robert testified that at the time Nancy's Mortgage was recorded, he did not have enough money to pay his indebtedness to ANB. Robert further testified that the Colorado Property was his most valuable asset at that time. Thus, the Court finds that the granting of the Mortgage to Nancy in the amount of $300,000.00 was a transfer of substantially all of Robert's remaining assets.

In sum, there are numerous "badges of fraud" present in this matter: (1) the transfer was made to Nancy, an insider; (2) Robert retained possession of the Colorado Property after he recorded the Mortgage; (3) Robert did not disclose the Mortgage to his creditors until it

-18-

was recorded in April 2003; (4) Robert had been sued by ANB to foreclose on its mortgage on the Colorado Property prior to the transfer; (5) the transfer was of substantially all of Robert's assets; (6) the value of the consideration received by Robert was not reasonably equivalent to the value of the transfer that Nancy received at the time of the recording of the Mortgage; (7) Robert was insolvent or became insolvent shortly after the transfer; and (8) the Mortgage was recorded shortly after a substantial debt was incurred.  Consequently, the Court finds that the Trustee has made a prima facie case that the recording of the Mortgage was done with actual intent to hinder, delay, or defraud Robert's creditors.

As enumerated *supra*, Robert and Nancy have asserted three affirmative defenses. However, they have failed to indicate which specific defenses they are asserting under the CUFTA. The Court has already rejected the third defense–that the recording of the Mortgage did not constitute a transfer.  This defense is not valid under § 38-8-109 of the CUFTA.

Robert and Nancy also contend pursuant to their first and second affirmative defenses that the Mortgage was given to Nancy at the same time she loaned Robert $300,000.00.  The Court rejects Robert and Nancy's defenses.  While the Mortgage was allegedly executed contemporaneously with the loan that Nancy made to Robert and the note evidencing such loan, the Mortgage was not recorded until two and one-half years later.  Pursuant to the Colorado recording statute, COLO. REV. STAT. § 38-35-109, Nancy was not given a secured interest in the Colorado Property until April of 2003.  Specifically, § 38-35-109(1) provides in pertinent part as follows:

> All . . . agreements . . . conveying, encumbering, or affecting
> the title to real property . . . may be recorded in the office of
> the county clerk and recorder of the county where such real

-19-

> property is situated. . . . No such unrecorded instrument or
> document shall be valid against any person with any kind of
> rights in or to such real property who first records and those
> holding rights under such person, except between the parties
> thereto and against those having notice thereof prior to
> acquisition of such rights. This is a race-notice recording
> statute.

COLO. REV. STAT. § 38-35-109(1).

Pursuant to this statute, a mortgage granted to a person who fails to record his

property interest can result in that interest being rendered worthless if a subsequent bona fide

purchaser records his interest first. *In re Harms*, 7 B.R. 398, 400 (Bankr. D. Colo. 1980).

Thus, the Court concludes that Nancy received a secured interest in the Colorado Property

when the Mortgage was recorded in April 2003 that she did not have when she made the

$300,000.00 loan to Robert in October 2000. Moreover, the Court finds the timing with

respect to the recording of the Mortgage suspect. However, on this limited record, the Court

is unwilling to find a lack of good faith. Nevertheless, as noted *supra*, there was no

reasonably equivalent value given in exchange for the transfer. Both good faith and a

reasonably equivalent value must be shown in order for the defense to apply. *Thomason*, 202

B.R. at 774. Consequently, the Court rejects Robert and Nancy's defenses.

The CUFTA sets forth the remedies available once a transfer is determined to be

fraudulent. Those remedies include "[a]voidance of the transfer . . . to the extent necessary

to satisfy the creditor's claim[.]" COLO. REV. STAT. § 38-8-108(1)(a). The Colorado

Supreme Court has explained that in fraudulent conveyance actions, "[t]he primary remedy

. . . is a declaration that the fraudulent conveyance is void as to the judgment creditor. In

other words, the remedy sought is to return the property fraudulently conveyed to its prior

-20-

status of ownership thereby bringing it within reach of the judgment creditor of the fraudulent transferor." *Miller v. Kaiser*, 433 P.2d 772, 775 (Colo. 1967).

The Court finds that because the Trustee has proved a prima facie case under § 38-8-105(1)(a) and Robert and Nancy have not demonstrated a defense thereto, the proper remedy is to avoid the Mortgage on Robert's Colorado Property. Hence, the Court enters judgment in favor of the Trustee and avoids the Mortgage pursuant to § 544(b)(1).

### B. Colo. Rev. Stat. § 38-8-105(1)(b)

Next, the Court must determine whether the transfer was constructively fraudulent under § 38-8-105(1)(b) of the CUFTA. Under this alternate theory, the Trustee must show that Robert made the transfer without receiving a reasonably equivalent value in exchange. The Court finds that the Trustee has met all of the elements to establish a prima facie cause of action under § 38-8-105(1)(b). Robert made a voluntary transfer to Nancy. At the time of the transfer, he had incurred a substantial debt to ANB. Moreover, for the reasons articulated *supra*, Robert made the transfer to Nancy without receiving a reasonably equivalent value. Finally, after the transfer, Robert failed to retain sufficient property to pay the remaining debt to ANB. Consequently, the Court holds that the Trustee has proved a prima facie case under § 38-8-105(1)(b). The transfer from Robert to Nancy was also constructively fraudulent.

Further, the defenses pursuant to § 38-8-109(5) are neither available to Robert and Nancy nor applicable here because the situation does not involve termination of a lease or the enforcement of a security interest in compliance with the provisions of the Uniform

-21-

Commercial Code.[7] Accordingly, the Court avoids the Mortgage on the Colorado Property under § 544(b)(1).

### C. Colo. Rev. Stat. § 38-8-106(1)

Next, the Trustee seeks to avoid the Mortgage pursuant to § 38-8-106(1) of the CUFTA. The Trustee contends that Robert received less than a reasonably equivalent value in exchange for the Mortgage and was insolvent at the time the Mortgage was recorded in April of 2003.

The Court finds that the Trustee has demonstrated all of the requisite elements to sustain a prima facie cause of action under § 38-8-106(1). First, the Trustee has shown, and Robert does not dispute, that a creditor who had the right to assert a claim still has a claim that arose before the alleged fraudulent transaction. Specifically, Robert admitted that at the time the Mortgage was recorded, he was indebted to ANB. In particular, Robert testified that at the time he recorded the Mortgage, he was unable to pay ANB the approximate $1,300,000.00 he owed. In March 2003, ANB made a demand on Robert pursuant to the guaranties he executed with respect to the Spectrum loan. In addition, ANB had a pending

---

[7] Specifically, § 38-8-109(5) provides as follows:

> (5) A transfer is not voidable under section 38-8-105(b)(1) or 38-8-106 if the transfer results from:
> > (a) Termination of a lease upon default by the debtor when the termination is pursuant to the lease and applicable law; or
> > (b) Enforcement of a security interest in compliance with the provisions of the "Uniform Commercial Code–Secured Transactions," article 9 of title 4, C.R.S.

COLO. REV. STAT. § 38-8-109(5).

-22-

lawsuit against Robert to foreclose on its mortgage on the Colorado Property. Thus, ANB's claim arose prior to the purported fraudulent transfer.

Second, as discussed *supra*, the Trustee established that Robert recorded the Mortgage without receiving a reasonably equivalent value in exchange for the transfer. Finally, the Court previously determined that Robert was insolvent at the time of the recording of the Mortgage or became insolvent as a result. Moreover, as discussed *supra*, the defenses in § 38-8-109(5) are not applicable here. In sum, the Court finds that the Trustee has established all of the elements necessary to sustain a cause of action under § 38-8-106(1) of the CUFTA. As such, the Mortgage is avoided pursuant to § 544(b)(1).

### D. Colo. Rev. Stat. § 38-8-106(2)

Finally, the Trustee seeks to avoid the Mortgage pursuant to § 38-8-106(2) of the CUFTA. The Trustee contends that the transfer was made to an insider for an antecedent debt, that Robert was insolvent at the time, and that Nancy had reasonable cause to believe that Robert was insolvent.

A cause of action with respect to a fraudulent transfer under § 38-8-106(2) of the CUFTA must be brought within one year after the transfer was made. COLO. REV. STAT. § 38-8-110(1)(c). The Mortgage given to Nancy on the Colorado Property was recorded in April 2003. This adversary proceeding, however, was not commenced until October 26, 2004, more than one year after the transfer was made. Hence, the Court finds that the Trustee's cause of action under § 38-8-106(2) is time barred.

Even if the Trustee had brought this cause of action in a timely manner, however, the Court finds that she has not demonstrated all of the requisite elements to sustain a prima facie

-23-

cause of action under § 38-8-106(2). The Court determined *supra* that Nancy is an insider of Robert and that Robert was insolvent at the time the Mortgage was recorded. Further, the Court finds that the transfer was for an antecedent debt. Nancy loaned Robert $300,000.00 in October of 2000, which was evidenced by a promissory note executed by Robert in favor of Nancy. In addition, Robert granted Nancy the Mortgage on the Colorado Property at the same time that she loaned him the money. However, the Mortgage obligation was not recorded until two and one-half years later.

Lastly, the Court finds that the Trustee failed to demonstrate that Nancy had reasonable cause to believe that Robert was insolvent. Nancy testified that she was unaware of whether Robert had sufficient assets to pay the ANB debt pursuant to the guaranties. The Trustee proffered no evidence to rebut Nancy's testimony, which the Court found credible. Consequently, the Trustee has not sustained a cause of action under § 38-8-106(2) of the CUFTA.

**E. Whether the Court Should Award Damages, Prejudgment Interest, Attorney's Fees, and Costs to the Trustee**

**1. Damages**

The Trustee seeks "damages arising out of the fraudulent transfer in an amount to be determined at trial. . . ." Trustee Ex. No. 1 at 6. The Trustee does not cite any authority for the entry of such damages and fails to specify whether she seeks compensatory or punitive damages. Indeed, no evidence was adduced at trial with respect to any damages that arose out of the fraudulent transfer. Perfunctory and undeveloped arguments and arguments that are unsupported by pertinent authority are waived. *United States v. Lanzotti*, 205 F.3d 951,

-24-

957 (7th Cir.) (collecting cases), *cert. denied,* 530 U.S. 1277 (2000). The Court does not have

a duty to research and construct legal arguments available to a party. *See Head Start Family*

*Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11,* 46 F.3d 629, 635 (7th Cir. 1995).

Moreover, a litigant who fails to support a request with pertinent authority forfeits that

request. *Pelfresne v. Vill. of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir. 1991). Because the

Trustee failed to cite any authority for the entry of damages and, more importantly, failed to

proffer any evidence of damages, such request is denied.

Furthermore, the Colorado Supreme Court has held that punitive damages are not

available on a fraudulent conveyance claim. *Miller,* 433 P.2d at 776-77; *see also, Morris v.*

*Askeland Enters., Inc.,* 17 P.3d 830, 832 (Colo. Ct. App. 2000). Thus, the Court denies the

Trustee request for this additional reason.

### 2. Prejudgment Interest

The Trustee has also made a demand in the complaint for prejudgment interest. The

Bankruptcy Code does not specifically provide for the award of prejudgment interest. The

purpose of allowing prejudgment interest is compensatory, not punitive; such interest is

granted to make the prevailing party whole. *See In re Milwaukee Cheese Wis., Inc.,* 112 F.3d

845, 849 (7th Cir. 1997). Not only must the award of prejudgment interest be compensatory,

but it is also within a court's discretion to determine if such an award is equitable. *Id.*

("Discretion must be exercised according to law, which means that prejudgment interest

should be awarded unless there is a sound reason not to do so."). "Discretion is not,

however, authorization to decide who deserves the money more." *Id.* In other words,

prejudgment interest is "simply an ingredient of full compensation" and should not be used

·25·

to create a windfall. *In re P.A. Bergner & Co.*, 140 F.3d 1111, 1123 (7th Cir.), *cert. denied*, 525 U.S. 964 (1998).

The Court, in the exercise of its discretion, declines to award the Trustee prejudgment interest because the Trustee failed to invoke persuasive authority for such award. Prejudgment interest in this situation is not necessary to make Robert's estate whole. *See, e.g., Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 599 (Bankr. N.D. Ill. 2005) (declining to award prejudgment interest because the trustee's recoveries were sufficient). The Court is not entering a monetary judgment in favor of the Trustee. Rather, the Court is avoiding Nancy's Mortgage on the Colorado Property. The Court finds that the avoidance of Nancy's Mortgage makes Robert's estate whole and that the award of prejudgment interest would constitute a windfall to the estate. Hence, the Court denies the Trustee's request for prejudgment interest.

### 3. Attorney's Fees

Next, the Trustee makes a request for attorney's fees. The Trustee has failed to cite any provision in the Bankruptcy Code that authorizes the award of her attorney's fees. Indeed, § 544 of the Code, one of the provisions upon which the Trustee relies in this adversary proceeding in support of her request to avoid the Mortgage, does not specifically authorize the Court to award attorney's fees. Moreover, the Court avoided the Mortgage under Colorado law. Thus, the Court must also look to Colorado law to determine whether there exists a basis for such an award. On this point, Colorado law is clear. Colorado follows the American rule which holds that attorney's fees are not available to a prevailing party absent statutory authority, an express contractual provision, or a court rule. *Allstate*

-26-

*Ins. Co. v. Huizar*, 52 P.3d 816, 818 (Colo. 2002); *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo. 1996); *Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 940 (Colo. 1993); *Moore v. Edwards*, 111 P.3d 572, 573 (Colo. Ct. App. 2005); *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 150 (Colo. Ct. App. 2003). The Trustee has failed to point to specific statutory authority, an express contractual provision, or a court rule that would provide for the award of her attorney's fees. Absent such a showing, the Court denies the Trustee's request for an award of attorney's fees.

### 4. Costs

Finally, without citation to any statute or case law, the Trustee seeks the award of her court costs. Pursuant to Federal Rule of Bankruptcy Procedure 7054(b), "[t]he court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." FED. R. BANKR. P. 7054(b). The Court is unaware of any statute or Bankruptcy Rule that would not provide for the allowance of costs to the Trustee. Pursuant to 28 U.S.C. § 1920, the Court may award a prevailing party taxable costs. That statute provides as follows:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;

·27·

> (6) Compensation of court appointed experts,
> compensation of interpreters, and salaries,
> fees, expenses, and costs of special
> interpretation services under section 1828 of
> this title.
> A bill of costs shall be filed in the case and, upon allowance,
> included in the judgment or decree.

28 U.S.C. § 1920.

The Court has broad discretion to determine whether and to what extent to award costs to prevailing parties. *See Barber v. Ruth*, 7 F.3d 636, 644 (7th Cir. 1993). There is a strong presumption favoring the award of costs to the prevailing party. *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997). Allowable costs, however, are limited to the categories in § 1920, and expenses that are not authorized by statute must be borne by the party incurring them. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-45 (1987). The losing party must satisfy a heavy burden when asserting that he should be excused from paying costs and affirmatively establish either that the costs fall outside the parameters of § 1920, that they were not reasonably necessary to the litigator, or that the losing party is unable to pay. *See Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1236 (7th Cir. 1985).

The Court assesses the Trustee's taxable costs against Robert and Nancy pursuant to 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054-1 within thirty days hereof.

-28-

## IV. CONCLUSION

For the foregoing reasons, the Court grants partial judgment in favor of the Trustee and finds that the recording of the Mortgage was a fraudulent transfer pursuant to §§ 38-8-105(1)(a) and (b) and 38-8-106(1) of the CUFTA and, as such, is avoided under § 544(b)(1). The Trustee's cause of action under § 38-8-106(2) of the CUFTA is time barred. Even if that action was not time barred, the Court finds that the Trustee has failed to prove a prima facie case under § 38-8-106(2). The Trustee's request for damages, prejudgment interest, and attorney's fees is hereby denied. The Trustee's taxable costs will be assessed against Robert and Nancy under 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054-1 within thirty days hereof.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _10/24/5_

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Gina B. Krol, Trustee, v. Robert K. Unglaub, Jr. & Nancy L. Unglaub

#### Adversary No. 04 A 03943

Ira Bodenstein
United States Trustee
227 West Monroe Street
Suite 3350
Chicago, IL 60606

Gina B. Krol, Esq.
Cohen & Krol
105 W. Madison Street
Suite 1100
Chicago, IL 60602

John M. Kennelly, Esq
Kennelly & Associates
1010 Lake Street,
Suite 605
Oak Park, IL 60301

Barry A. Chatz, Esq.
Miriam R. Stein, Esq.
Patti S. Levinson, Esq.
Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, IL 60606

Harold T. Rohlfing, Esq.
Harold T. Rohlfing, P.C.
1010 Lake Street
Suite 612
Oak Park, IL 60301